IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARTHUR EARL THOMPSON #509117 | § | |
| v. | § | CIVIL ACTION NO. 6:06cv50 |
| DOUGLAS DRETKE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

  The Plaintiff Arthur Thompson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the prison. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

  An evidentiary hearing was conducted on April 18, 2006, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Thompson testified that he was confined at the Michael Unit in May of 2005. On May 27, 2005, he received a job change to the field, but was sent back to the trusty camp and on June 16, he was assigned to the utility squad. The following day, he was called out to the field squad. There, he was shown how to saddle a horse and told to get on. Thompson protested that he did not know how to ride a horse, and he was told "a little," but that was all.

  Thompson said that as the inmates were leaving on their horses, another inmate asked Thompson to trade horses with him because the other inmate's stirrups did not fit. Thompson traded horses and rode out to work.

  As he was riding the horse in from the field, Thompson said, the horse bolted, stopped, and then bolted again. When the horse went into the barn, it ran between a line tool wagon and the fence, striking Thompson's leg on the wagon and breaking it. The horse then stopped at the hitching post

1

area.  Thompson says that he got off the horse and lay on the ground to wait for help.  Captain Collins found him and called for paramedics.  He was taken to Palestine Regional Hospital where he received surgery.

Thompson says that another inmate later told him that on the day after his injury. Sgt. Hill called all the field force workers and made them sign safety papers, and that Hill wrote that Thompson had "refused to sign" the paperwork.  However, he testified at the evidentiary hearing that when he filed his grievance, the Step One response said that he had signed safety papers, acknowledging that he had received training, on June 17.  He filed a Step Two grievance saying that he had never signed safety papers and that his signature on them had been forged, but the response to this was that he had signed safety papers on June 17 and that there was an upcoming "horse clinic" to provide additional training.  Thompson says that he met with the grievance coordinator at the Dalhart Unit and that she could "clearly see" that the signature on the safety papers was not his.

Warden Pratt, a TDCJ-CID official also present at the Spears hearing, testified that according to prison records, Thompson was put on a "subdued" horse, but traded horses with another inmate.  Thompson responded that the prisoners were not assigned specific horses and that the person with whom he had traded was also an inexperienced rider,

Thompson argued that he should not have been assigned to the job and that he received inadequate training.  He said that Warden Pratt had assigned him to the fields, apparently because he had a meeting set up with a parole officer who did not show up, and so he went to work and another officer found him and told him to get in the legal cage to wait for his meeting.  He stated that Pratt sent Lt. Ballard to the trusty camp to give him a disciplinary case.[1]  Thompson indicated that Pratt had intentionally reassigned him to the fields, although he did not indicate that this was done

---

[1]Warden Pratt, who was present at the Spears hearing, said that Thompson got a job reassignment because there had been complaints that he had been "flirting" with female personnel. The Court will disregard Warden Pratt's testimony in this regard to the extent that it conflicts with Thompson's.

for the purpose of having him injured or even that Pratt knew that Thompson would be assigned to work with the horses when he assigned him to work in the fields.

## Legal Standards and Analysis

Thompson's primary complaint concerns his claim that a lack of safety training led to his injury. This is in effect a claim that the prison officials were deliberately indifferent to his safety, resulting in his injury.

Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

More recently, the Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

It should be noted in this regard that complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. *See* Bowie v. Procunier, 808 F.2d 1142 (5th Cir. 1987) (inmate lost an eye as a result of failure to provide safety equipment; held not to be a constitutional violation).

A similar situation exists in this case. Thompson's complaint is in effect one of negligence; he argues that the prison officials showed a lack of due care in assigning him to rise a horse and in failing to provide proper training, even as the defendants in Bowie failed to provide adequate safety equipment. His pleadings and testimony simply fail to show that the prison officials were deliberately indifferent to his safety, rather than being merely negligent or careless. As the Fifth Circuit has observed, deliberate indifference is "an extremely high standard to meet." *See* Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001). While the Court does not in any way minimize the severity of Thompson's injury, it is by no means unusual for negligent acts to result in serious injury, as seen in Bowie and many other cases. Regardless of the seriousness of the injury, however, the Supreme Court and the Fifth Circuit have made clear that negligence does not set out a basis for a constitutional claim under the Due Process Clause or 42 U.S.C. §1983. For this reason, Thompson's claim on this point must fail.

Thompson also complained that prison officials "falsified the records" by creating documents showing that he had signed safety records when he had not. The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994).

In this case, even if the records were falsified, Thompson has not shown that this is a violation of a right secured by the Constitution or laws of the United States. *See, e.g.*, Knox v. Wainscott,— F.Supp.2d — (N.D.Ill. 2003) (available on WESTLAW at 2003 WL 21148973) (no Section 1983 claim against nurse who allegedly falsified injury report; even if the nurse engaged in professional misconduct, no constitutional violation was shown). Similarly, if forged records showing that Thompson had received safety training, when in fact he had not, were placed in his file, this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any rights protected by the Constitution or laws of the United States. *Cf.* Baker v. McCollan, 443 U.S. 137, 146 (1979) (noting that many claims which may be actionable as violations of state tort law do not amount to constitutional violations).

At one time, the Fourth Circuit held that a claim of constitutional magnitude may be stated if an inmate shows that false information is in his file which is relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201 (4th Cir.), *cert. denied* 444 U.S. 925 (1979); *see also* Guthrie v. Evans, 93 F.R.D. 390, 395 (S.D. Ga. 1981) *and* McCrery v. Mark, 823 F.Supp. 288, 291 (E.D.Pa. 1993). The Fourth Circuit made clear that the fact that merely because an inmate disputes evaluations and opinions concerning him does not show that the information is false. Paine, 595 F.2d at 201.

However, Paine has been questioned by the Fifth Circuit and other courts, including the Fourth Circuit itself. Paine arose in the context of information in a parole file, and because inmates have no constitutional right to release on parole, the courts, including the Fifth Circuit, have concluded that there are no procedural due process protections for procedures unrelated to protected liberty interests. Johnson v. Rodriguez, 110 F.3d at 308-09 and n. 13. In Johnson, as noted above, the Fifth Circuit expressly stated that because Texas prisoners have no protected liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural or substantive grounds. Johnson, 110 F.3d at 308. This includes the contentions concerning allegedly false information; the Fifth Circuit concluded that Johnson's allegation that the Board considers

unreliable or even false information in making parole determinations, without more, did not assert a federal constitutional violation.

In this case, were the Paine test applied, Thompson's claim regarding his records would fail because he has not shown that the allegedly false information placed in his file has been relied upon to a constitutionally significant degree. Under Rodriguez, Thompson's claim regarding his records would likewise fail because the claim does not assert a federal constitutional violation. While the Court offers no opinion as to whether or not Thompson may have valid claims under state law, it is clear that his allegations lack merit when analyzed under federal law.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Thompson's claims lack any arguable basis in law under Section 1983 and are based upon an indisputably meritless legal theory insofar as he seeks to proceed under the Constitution of the United States. For this reason, his lawsuit may be dismissed. It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED as frivolous with prejudice as to its refiling in federal court, but without prejudice as to any relief under state tort law which Thompson may seek in the courts of the State of Texas. It is further

ORDERED that the statute of limitations on Thompson's state law claims be and hereby is TOLLED from the date that the lawsuit was originally filed until 30 days after the date of entry of final judgment in the case. Finally, it is

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **4** day of **May, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE